J. RAY McDERMOTT & CO., INC., Plain-
tiff-Appellee-Cross Appellant,

v.

The VESSEL MORNING STAR et al., etc.,
The Fish Meal Company, Harvey W.
Smith, Defendants-Appellants-Cross-Ap-
pellees, and Texas Menhaden Company,
Intervenor-Appellant-Cross Appellee.

No. 28496.

United States Court of Appeals,
Fifth Circuit.

March 23, 1972.

Rehearing and Rehearing En Banc
Denied May 12, 1972.

Frank J. Peragine, William S. Stone, New Orleans, La., Bryan J. McGinnis, Beaumont, Tex., for defendants-appellants; Deutsch, Kerrigan & Stiles, New Orleans, La., and Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., of counsel.

Shearman & Sterling, New York City, Monroe & Leamann, James G. Burke, Jr., New Orleans, La., for amicus curiae First National City Bank.

Dave McNeill, Jr., Robert M. Julian, Houston, Tex., Neal D. Hobson, Kennedy J. Gilly, New Orleans, La., for plaintiff-appellees; Vinson, Elkins, Searls & Smith, Houston, Tex., and Milling, Saal, Benson, Woodward & Hillyer, New Orleans, La., of counsel.

Robert B. Acomb, Jr., Herschel E. Richard, Jr., New Orleans, La., for amicus curiae Avondale Shipyards.

Before JOHN R. BROWN, Chief Judge and WISDOM*, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

DYER, Circuit Judge:

The question whether state or federal law governs deficiency judgments under the Ship Mortgage Act is a matter of such vital public concern that we placed this action for the foreclosure of a preferred ship mortgage en banc.

The district court granted a deficiency judgment in favor of McDermott (the shipbuilder) and against the Smith interests (the purchaser) for the difference of the amount bid on the judicial sale of the vessels and the balance of the indebtedness due on the notes secured by the preferred mortgage.

The prior opinion in this case said: That Law [Louisiana] provided that the sale of mortgaged property under a waiver of appraisal (as here) without prior appraisal fully satisfies and discharges the debt insofar as it con-

---

* Judge Wisdom did not participate in the consideration of or in the decision in this case.

stitutes a personal obligation of the debtor. The law of Louisiana seems to be clear that the mortgagee may require a waiver and it may, if it wishes, sell under the terms of that waiver, but when it exercises that privilege it surrenders the right to pursue the debtor *in personam* for the balance due. The debt is extinguished and no deficiency survives . . .

We hold that the admiralty court under the terms of the federal statute clearly has the right to grant deficiency judgments, where deficiencies exist. To ascertain the existence or non-existence of a deficiency, the federal law being silent on the subject, we are compelled to look to the mortgage and to state law governing rights of the parties under the mortgage . . . 431 F.2d 714 at 724.

Because of the provisions of Louisiana law concerning appraisal McDermott was held not to be entitled to a deficiency judgment against the Smith interests and the judgment of the district court was vacated. We hold that the panel opinion was based upon an error of law, which we overrule. Nevertheless, we vacate the deficiency judgment to await the outcome of a new trial ordered by this Court on the breach of contract action brought by the Smith interests.

■ The vessels constructed by McDermott under contract with the Smith interests were sold at a public sale and the sale was confirmed by the court without an appraisal having been made. The sale brought a price insufficient to pay the debt and extinguish the mortgage. Consequently, a deficiency judgment for the difference was rendered against the Smith interests *in personam*. 46 U.S.C.A. § 954(a). Smith did not object to the sale but attacked the deficiency judgment, contending that under La.R.S. 13:4106 and 4107 a deficiency judgment is barred whenever there has been no appraisal. Because the federal statutes regulating judicial sales do not speak to the validity *vel non* of a

deficiency judgment where there has been a public sale without appraisal, Smith argues that there is a gap in the federal procedure and that the Louisiana statute, as the law of the adjacent state, should be caulked into this cranny. We disagree.

■ Initially, it is important to emphasize the purpose underlying the enactment of the Ship Mortgage Act of 1920. This Act is a part of the Merchant Marine Act of 1920, 46 U.S.C.A. § 861 et seq. Congress recognized that maritime matters have a great impact upon interstate and international commerce and that there was a need for a uniform body of maritime law. *See* The Lottawana, 1875, 88 U.S. (21 Wall.) 558, 577, 22 L.Ed. 654. The congressional intent in enacting this legislation was to promote and encourage the continued development of the American merchant marine. Mastan Co. v. Steinberg, 3 Cir. 1969, 418 F.2d 177, 179, cert. denied, Todd Shipyards Corp. v. Mastan Co., 1970, 397 U.S. 1009, 90 S.Ct. 1238, 25 L.Ed.2d 422. "The passage of the Ship Mortgage Act came about primarily from the necessity of affording substantial security to persons supplying essential financing to the shipping industry." Merchants & Marine Bank v. The T. E. Welles, 5 Cir. 1961, 289 F.2d 188, 193–194.

■ Although the federal courts have jurisdiction of admiralty and maritime matters because of the recognized necessity of national control over this important commercial area, Panama R.R. Co. v. Johnson, 1923, 264 U.S. 375, 386, 44 S.Ct. 391, 68 L.Ed. 748, prior to the enactment of the Ship Mortgage Act admiralty had no jurisdiction over a suit to foreclose a mortgage on a ship. Detroit Trust Co. v. The Barlum, 1934, 293 U.S. 21, 32, 55 S.Ct. 31, 79 L.Ed. 176. The need for exclusive jurisdiction of the admiralty court and uniformity of procedure in ship mortgage foreclosure proceedings was stressed when the Senate held its hearings on the Mer-

chant Marine Bill. Thus the legislative history clearly shows that:

> This bill is drawn with the intent of . . . providing for a speedy and uniform practice of foreclosure in the Federal Courts instead of leaving the mortgagees to the varying procedures of the courts of the several states.

Hearings Relative to the Establishment of an American Merchant Marine, Committee on Commerce, United States Senate, 66th Cong., 2d Sess., at 933.

It is clear that Congress intended that the ready availability of credit to support interstate commerce should not be impeded by parochial limitations and that the Act would wholly and completely supersede state law and practice in every respect.

 In accordance with the national scope of the Ship Mortgage Act it must be construed, if possible, to maintain the desired uniformity necessary to effectuate its purposes. Although state law may occasionally be utilized to fill the gaps in an incomplete and less than perfect maritime system it cannot be employed to contravene an act of Congress, to prejudice the characteristic features of the maritime law or to disrupt the harmony it strives to bring to international and interstate relations. Romero v. International Terminal Operating Co., 1959, 358 U.S. 354, 373, 79 S.Ct. 468, 3 L.Ed.2d 368; Just v. Chambers, 1941, 312 U.S. 383, 389–390, 61 S.Ct. 687, 85 L.Ed. 903; Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086.

We perceive no void in the statutory scheme here. Therefore, it is not necessary to turn to state law to implement the act with respect to deficiency judgments. Indeed, "to engraft the various nuances of state law onto federal legislation would introduce an undesirable lack of uniformity in the interpretation of Congressional enactments" and would impede the harmony and uniformity

sought by the Act. *See* Mastan Co. v. Steinberg, *supra.*

The Ship Mortgage Act, when read together with the statutes delineating the judicial sale procedure in the federal courts forms a comprehensive procedure for the foreclosure of a preferred ship's mortgage, the sale of the vessel and any resulting deficiency adjudged against the debtor *in personam.*

46 U.S.C.A. § 951 provides that a mortgagee may enforce his lien by a suit *in rem* in admiralty. Original jurisdiction is granted exclusively to the district courts. Section 954(a) permits the mortgagee to bring suit *in personam* against the mortgagor in admiralty for any deficiency in the amount of the indebtedness secured by the vessel. Fed. R.Civ.P. E(9) (b) provides that a judicial sale may be held prior to the completion of the foreclosure action. 28 U.S.C.A. § 2004 directs that any personalty sold under order of a court must be sold in accordance with Section 2001. The latter section provides for both private and public sales and defines the prerequisites necessary for their validity. Section 2001(b) requires, *inter alia,* that the court appoint three disinterested persons to appraise the property before it can confirm a *private* sale. There is no appraisal requirement under Section 2001(a) for a *public* sale.

 Where Congress has carefully employed a term in one place but excluded it in another, it should not be implied where excluded. *See e. g.,* Federal Trade Commission v. Sun Oil Co., 1963, 371 U.S. 505, 514–515, 83 S.Ct. 358, 9 L.Ed.2d 466 and Pena-Cabanillas v. United States, 9 Cir. 1968, 394 F.2d 785, 789–790. "We are not at liberty to imply a condition which is opposed to the explicit terms of the statute . . . To [so] hold . . . is not to construe the Act but to amend it." Detroit Trust Co. v. The Barlum, 293 U.S. *supra* at 38, 55 S.Ct. at 36.

Since Congress established the necessity of appraisal before private sale and

excluded the necessity for it at public sale and instead provided for the public sale to be under the court's direction, we are not at liberty to disregard the explicit legislative mandate and impose additional requirements borrowed from state law for a public sale.

■■ It is well settled that the determination as to the fairness of the sale price of a vessel at public sale is left to the sound discretion of the district court, that is, the court can refuse to confirm the sale if it feels that the price is grossly inadequate. United States v. Wells, 5 Cir. 1968, 403 F.2d 596, 598; Ghezzi v. Foss Launch & Tug Co., 9 Cir. 1963, 321 F.2d 421, 425. A mortgagor is therefore fully protected without the requirement of an appraisal under the comprehensive procedure provided by federal law.

■■ We hold that the Louisiana statute may not limit or restrict the application of the Ship Mortgage Act or affect the uniform application of that Act so as to defeat the Congressional purposes in adopting such legislation.

The panel opinion vacated the deficiency judgment in reliance upon Louisiana law. We agree that the deficiency judgment must be vacated but for a different reason. The liability under the contract upon which the mortgage is based has been remanded to the district court for a new trial. Until that action is decided, any application for a deficiency judgment would be premature. The sale and its confirmation were not before the Court; consequently, they remain unaffected.

The deficiency judgment is vacated and the cause is remanded for further proceedings not inconsistent with this opinion.

Vacated and remanded.

COLEMAN, Circuit Judge, with whom BELL and AINSWORTH, Circuit Judges join, dissenting:

I adhere to the views originally expressed in the panel opinion, 431 F.2d 714. The effect of that decision was that there is no federal law of mortgages; the mortgagors, mortgagees, and guarantors chose to define their liabilities in exact keeping with the Louisiana statutes; and Admiralty courts have no jurisdiction to rewrite the contract. In my opinion, the Ship Mortgage Act contains nothing which would deny the parties this right and its silence should not authorize court-made contracts in search of some kind of undefined "uniformity."

In short, it is my view that once a mortgage is made the Act provides a method for its registration and for the enforcement of its terms. The Act makes no attempt to prescribe the terms upon which parties may voluntarily bind themselves. Hence, striving for "uniformity", the en banc Court has missed the focal point of the panel decision of this controversy. Surely, it does not mean to hold that because an admiralty court is empowered to ascertain and adjudge a deficiency it can thereby impose one which is expressly negated by the contract.

Moreover, I flinch from the injustice of the result. If McDermott prevails on the issue of breach of contract, then it is to be permitted not only to keep the vessels but to be paid for them as well (all but a small part of the originally agreed purchase price). Moreover, McDermott keeps all the costly equipment installed by Fish Meal. I think the confirmation of the judicial sale sought should be re-opened. This was not a judicial sale to a third party for value. The mortgagee was the purchaser and it is still before the Court.

I respectfully dissent and, for my part, reiterate all that was said in the original panel opinion.

I am authorized by Judges BELL and AINSWORTH, the other members of the original panel, to say that they join in this dissent.

ON PETITION FOR REHEARING AND PETITION FOR RE-HEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.