**FIRST FEDERAL SAVINGS F.S.B., Plaintiff,**

v.

**M/Y SWEET RETREAT, her engines, tackle, appurtenances, etc. in rem; U.S. Advertising, Inc. and John G. Laramee, in personam, Defendants.**

Civ. A. No. 91–0057/L.

United States District Court, D. Rhode Island.

Feb. 23, 1994.

Stephen P. Sheehan, Wistow & Barylick Inc., Providence, RI, for plaintiff.

Michele A. Theroux, McGovern, Noel & Benik, Providence, RI, for defendants.

### MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, First Federal Savings F.S.B. ("First Federal"), and defendant, John G. Laramee, seek differing interpretations of the Ship Mortgage Act, 46 U.S.C. §§ 31301–31343 ("the Act").

This action was initially brought to obtain a court ordered foreclosure sale of the M/Y Sweet Retreat and a deficiency judgment against defendants U.S. Advertising, Inc. and Laramee. Ultimately, the sale of the vessel occurred privately, and plaintiff now seeks a deficiency judgment only against defendant Laramee.[1] For the reasons set forth below, plaintiff First Federal's motion for summary judgment is granted while defendant Laramee's is denied.

---

1. Plaintiff is not pursuing U.S. Advertising at present for reasons unknown to the Court.

## BACKGROUND

The material facts in this case are not in dispute. First Constitution Bank ("First Constitution") based in New Haven, Connecticut, held a Consumer Note executed in 1988 by defendant Laramee, personally, and on behalf of U.S. Advertising, based in Dover, Delaware, in the principal amount of $650,000 secured by a First Preferred Ship's Mortgage on the M/Y Sweet Retreat. Defendant Laramee and U.S. Advertising defaulted on the note in December of 1990 and although given many opportunities, they did not cure the default. First Constitution, therefore, attempted to resort to the collateral, the M/Y SWEET RETREAT, pursuant to the terms of the First Preferred Ship's Mortgage by bringing this action in February 1991. Some of the pertinent provisions of the Mortgage are as follows:

GOVERNING LAW: The parties have chosen federal law, including but not limited to 46 U.S.C. § 911 and the sections following in the Ship Mortgage Act of 1920, as amended to cover all of the provisions of this Mortgage. In particular, 46 U.S.C, § 926(d) covers the interest provisions of the Note and this Mortgage. If there are gaps in federal law as to non-interest provisions, and only to such extent, the law of the state of Connecticut shall govern this transaction.

REPOSSESSION AND FORECLOSURE: We have the right to repossess the boat without Court Order, if you default. Alternatively we have the right to foreclose in Federal Court under the maritime law of the United States.

SALE OR USE IN STORAGE OF REPOSSESSED BOAT: If we repossess the boat, we may, in your name, sell, lease, charter, operate or otherwise use the boat as we may think advisable, being accountable for net profits, if any, and keep the boat free of charge at your premises or elsewhere, at your expense ...

RESALE CREDIT: If we resell the boat, any late charges, costs of taking the boat, storage, costs of sale (cleaning, repairing, auctioneer's fee, Marshal's fee, if any, sales commission, if any; and advertising), cost of insurance, allowable attorney's fees and court costs will be subtracted from the price at which your boat is sold after repossession. The difference, if any, would be a resale credit.

SURPLUS OR A DEFICIENCY: If you owe more than the resale, you will pay the difference (the "deficiency"). If you owe less than the resale credit, you will receive the difference from us (the "surplus").

NO WAIVER OF RIGHTS: We may delay in enforcing any of our rights without losing any of them.

The Consumer Note executed by defendant Laramee also expressly provided that:

"If I am in default under this note, you can take or foreclose on the collateral as permitted by law. Then, you can use the proceeds of the sale or the disposition of the collateral toward paying off what I owe under this note."

The vessel was arrested by the U.S. Marshal here in Rhode Island and a default judgment was entered against the vessel in the amount of $641,780.87 in April, 1991 by order of this Court. Also by order of the Court, a Marshal's sale was scheduled for June 19, 1991 but on the day of the sale U.S. Advertising obtained an order from this Court enjoining the sale by invoking the bankruptcy automatic stay on the grounds that U.S. Advertising filed a Chapter 11 petition in the Bankruptcy Court for the District of Rhode Island. U.S. Advertising then obtained orders from this Court and the Bankruptcy Court releasing the M/Y SWEET RETREAT from the custody of the Marshal and directing that the vessel be redelivered to U.S. Advertising. The redelivery was made but U.S. Advertising defaulted on its obligations under the reorganization, whereupon the Bankruptcy Court by written order lifted the automatic stay and expressly provided that First Constitution could "assert all of its rights and remedies against the M/Y Sweet Retreat, including but not limited to requesting the United States District Court for the District of Rhode Island to issue admiralty and maritime warrant of arrest. . . ." *In Re U.S. Advertising, Inc.,* No. 91–11631 (Bankr.D.R.I. Jan. 23, 1992). U.S. Advertising never filed a plan of reorganiza-

tion and its Petition for Reorganization was dismissed on February 20, 1992.

At that point, First Constitution could have requested an order of this Court to have the vessel re-arrested and sold by the U.S. Marshal. Instead, it elected to repossess the vessel and conduct a non-judicial sale. The vessel was sold privately in June, 1992 for slightly over $400,000.00.[2] Later, First Constitution went into receivership, was taken over by FDIC, and all its rights in this matter were assigned to First Federal which was substituted as plaintiff in this action in May 1993. First Federal then moved for a deficiency judgment against defendant Laramee in an amount exceeding $340,000.00 plus interest. Defendant Laramee disputes the availability of the remedy of private sale in cases involving the Ship Mortgage Act and thus claims that no deficiency judgment of any kind should be entered against him. After oral argument on the cross motions for summary judgment, the matter was taken under advisement. It is now in order for decision.

## DISCUSSION

The standard for ruling on a summary judgment motion is set forth in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Further, the court must view the facts and all inferences therefrom in the light most favorable to each nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). When there are no material facts in dispute on cross motions for summary judgment, the court must resolve the legal issues by determining which moving party is "entitled to a judgment as a matter of law."

The contested legal issue in this case is whether the Ship Mortgage Act provides a comprehensive and exclusive process for foreclosure which must be followed in all cases, or whether the mortgagee may resort to state law self-help methods to repossess a vessel and conduct a private foreclosure sale. The present dispute is similar to others arising in several cases. Defendant Laramee relies on cases which opine that the Act is comprehensive and exclusive. Accordingly, he argues that the mortgagee may not turn to state law to effect the foreclosure. He then goes on to note that if the Act is exclusive as to foreclosure procedure, the sales procedures set forth in the Judicial Sales Act[3] must be followed. Because the plaintiff's predecessor failed to comply with the Judicial Sales Act, the defendant posits, plaintiff is not entitled to a deficiency. To support his position defendant Laramee cites three cases. Two of those cases *Nate Leasing Co. v. Wiggins*, 114 Wash.2d 508, 789 P.2d 89 (1990), and *Bank of America Nat. Trust and Savings Assoc. v. Fogle*, 637 F.Supp. 305 (N.D.Cal.1985) squarely address the present issue and support defendant Laramee's contention that the Act is exclusive. In those cases, it was decided that the Ship Mortgage Act and the Judicial Sales Act form a comprehensive scheme for ship foreclosures, thus "leaving no room for the operation of state law." *Nate Leasing*, 789 P.2d at 93; *Fogle*, 637 F.Supp. at 307. The third case cited by defendant Laramee, *J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815 (5th Cir.1972), is not helpful. In *McDermott*, the mortgagee sued to recover a deficiency on a vessel sold at a public judicial sale. The issue in that case was whether the mortgagee was required to comply with Louisiana law concerning judicial sales in addition to the federal Judicial Sales Act. The Fifth Circuit perceived no gap in the Judicial Sales Act. *Id.* at 818. Furthermore, it held that state law may not restrict

---

**2.** Defendant Laramee claims to have secured a buyer at the last minute for $450,000.00 but First Constitution felt bound to sell to its buyer, giving Laramee credit as if the higher price had been secured.

**3.** 28 U.S.C. §§ 2001–2007.

the application of the federal law. *Id.* at 819. The situation in *McDermott* is quite different from the present case. In the present case, plaintiff claims that state law foreclosure procedures are a permitted alternative to federal law. It does not claim, as the mortgagor in *McDermott* did, that state law modifies the explicit federal judicial sale process. In fact the Fifth Circuit noted,

> Although state law may occasionally be utilized to fill the gaps in an incomplete and less than perfect maritime system it cannot be employed to contravene an act of Congress, to prejudice the characteristic features of the maritime law or disrupt the harmony it strives to bring to international and interstate relations.

*Id.* at 818.

Plaintiff's position, on the other hand, is supported by a line of cases that hold that the Act is not exclusive and that a mortgagee holding a defaulted ship's mortgage may, at its option, either utilize the Judicial Sales Act procedures or resort to state law to repossess and sell the vessel without the aid of the court. Plaintiff argues that the applicable laws of the State of Connecticut (the Uniform Commercial Code) were followed here and, therefore, it is entitled to the deficiency.

To support its argument, plaintiff cites four cases. *Pee Dee State Bank v. F/V Wild Turkey*, 1992 A.M.C. 1896, 1991 WL 355221 (D.S.C.1991); *Dietrich v. Key Bank, N.A.*, 693 F.Supp. 1112 (S.D.Fla.1988); *Brown v. Baker*, 688 P.2d 943 (Alaska 1984); *Price v. Seattle–First Nat'l Bank*, 582 F.Supp. 1568 (W.D.Wash.1983). These cases clearly support plaintiff's argument that a mortgagee may resort to the guidelines of state commercial law to privately foreclose on a first preferred ship's mortgage under the Act. This Court has also found the recent decision of Judge Andersen of the Northern District of Illinois in *Maryland Nat'l Bank v. Darovec*, 820 F.Supp. 1083 (N.D.Ill.1993) to add to plaintiff's supporting authority.

This Court agrees with the holdings of the line of cases advanced by plaintiff for several reasons. First, state self-help provisions are the typical way in which financiers enforce their mortgages. *Darovec*, 820 F.Supp. at 1087. To force a mortgagee to comply with

the "ambiguous federal law formalities" or forfeit any deficiency is an unduly harsh penalty. *Id.*

Second, The text of the act indicates that it is not exclusive. The *Darovec* court analyzed this point in depth:

> Section 31325(b)(1) of the Act provides that a preferred mortgage may be enforced by the mortgagee by suit in rem in admiralty and sub-section (b)(2)(A) provides that the mortgagee may enforce its claim for outstanding indebtedness by suit in personam. Neither of these provisions requires a lienholder's repossession of a boat to be supported by a decree in a judicial foreclosure proceeding—they merely outline the Act's provision of a foreclosure remedy. The use of the word "may" rather than must" indicates that a mortgagee may proceed under the Act to effectuate a foreclosure, but is not required to and may seek to proceed outside of the act. Thus, the Act itself stops short of preempting extra-judicial repossessions and private sales.

*Id.*

Finally, the regulations adopted by the United States Coast Guard under the Act give strong support to the proposition that the Act is not exclusive. While examining those regulations the *Darovec* Court noted, "Section 67.07–11 of the Coast Guard regulations, entitled 'Passage of title by extra-judicial repossession and sale', outlines requirements for documenting title to a vessel and purchases at an extra-judicial foreclosure sale, in compliance with the Act. 46 C.F.R. § 67.07–11 (1991)." 820 F.Supp. at 1087.

This Court, therefore, determines that the mortgagee of a First Preferred Ship's Mortgage may utilize private sale procedures authorized by state law to realize on the collateral. In this case the commercial law of the State of Connecticut was chosen by the executing parties in their contracts. Defendant Laramee has made no assertion that plaintiff's predecessor failed to comply with the applicable provisions of Connecticut law. Thus, plaintiff is entitled to a deficiency judgment against defendant Laramee in this case as a matter of law since it is clear that the

net sales price of the vessel was far less than the amount owed.

Although defendant Laramee has not made specific objection to the amount of deficiency claimed, this Court has questions about the calculation of the deficiency which can best be resolved at a hearing. Therefore, the Court will schedule a hearing for the determination of the amount of the deficiency judgment.

### CONCLUSION

Plaintiff First Federal's motion for summary judgment is granted on the issue of liability and defendant Laramee's motion for summary judgment is denied.

It is so ordered.